IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LEVEL ONE TECHNOLOGIES, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:14-cv-1305-RWS ) |
| PENSKE TRUCK LEASING CO., L.P., AND PENSKE LOGISTICS LLC, | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT**

Defendants Penske Truck Leasing Co., L.P. and Penske Logistics LLC, by their undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(e), respectfully submit this Reply Memorandum of Law in support of their Motion to Dismiss the state-court petition (hereinafter "the Complaint") filed by Level One Technologies, Inc. ("plaintiff" or "Level One") or, in the alternative, for a more definite statement of many allegations of the Complaint.

**I.     Plaintiff's Complaint Should Be Dismissed for Failing to Meet Rule 8's Pleading Requirements, or, Alternatively, Plaintiff Should File a More Definite Statement**

Plaintiff's grouping of Penske Truck Leasing Co., L.P., Penske Logistics LLC, Penske Logistics Mexico, and Penske Logistics Europe as "Penske" fails to provide adequate notice of the causes of action asserted against each company as required by Rule 8. Plaintiff erroneously argues it appropriately grouped the four companies because the companies acted as a single entity and/or were agents of each other. (Pl. Br. at 3). Plaintiff's group pleading asks this Court to ignore the corporate form. The Missouri Supreme Court, however, "has admonished that parent/subsidiary separation should 'be ignored with caution, and only when the circumstances

clearly justify it.'" *Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 18 (Mo. banc 2013) (quoting *Cent. Cooling & Supply Co. v. Dir. Revenue, State of Mo.*, 648 S.W.2d 546, 548 (Mo. banc 1982)). Courts will ignore corporate form only if plaintiffs have sufficiently alleged that an agency relationship exists or that piercing the corporate veil is appropriate. *McNeil v. Best Buy Co.*, No. 4:13-CV-1742, 2013 WL 5943920, at *1-2 (E.D. Mo. Nov. 4, 2013); *Blanks v. Fluor Corp.*, No. ED. 97810, 2014 WL 4589815, at *47 (Mo. Ct. App. Sept. 16, 2014) ("Courts, both nationwide and in Missouri, recognize two doctrines by which to hold a parent corporation liable for the acts of a subsidiary: piercing the corporate veil and agency.").

Plaintiff, however, provides only conclusory allegations to support its "piercing the corporate veil" and agency theories of liability. Because conclusory statements do not satisfy the pleading requirements for these liability theories, plaintiff cannot use these theories to justify its group pleading. Accordingly, plaintiff's Complaint should be dismissed for failing to meet pleading requirements because its group pleading does not provide the necessary notice.

### A. Plaintiff Provides Only Conclusory Statements to Support Its "Piercing the Corporate Veil" Theory of Liability

Plaintiff fails to allege facts to support its claim that Penske Truck Leasing Co., L.P., Penske Logistics LLC, Penske Logistics Mexico, and Penske Logistics Europe acted as one entity. Thus, plaintiff cannot rely on this theory to validate its group pleading. Generally, parent corporations are not responsible for the acts of their subsidiaries. *Radaszewski by Radaszewski v. Telecom Corp.*, 981 F.2d 305, 306 (8th Cir. 1992); *Doe 1631*, 395 S.W.3d at 18.[1] As a result, courts ignore corporate form and pierce the corporate veil only when three factors are shown:

(1) Control, not merely majority or complete stock control, but

---

[1] This remains true even when the stock is partially or entirely owned by another. *Cent. Cooling & Supply Co. v. Dir. Revenue, State of Mo.*, 648 S.W.2d 546, 548 (Mo. banc. 1982). Thus, plaintiff's claim that Penske Logistics LLC is a wholly owned subsidiary of Penske Truck Leasing Co., L.P. does not affect this analysis.

2

> complete dominion, not only of finances, but of policy and
> business practice in respect to the transaction attacked so that the
> corporate entity as to this transaction had at the time no separate
> mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit
> fraud or wrong, to perpetrate the violation of a statutory or other
> positive legal duty, or dishonest and unjust act in contravention of
> plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately
> cause the injury or unjust loss complained of.

*Radaszewski by Radaszewski*, 981 F.2d at 306 (quoting *Collet v. Am. Nat'l Stores, Inc.*, 708 S.W.2d 273, 284 (Mo. Ct. App. 1986)). If a plaintiff fails to allege facts to support these three factors, Missouri district courts hold that the plaintiff has not met pleading requirements and refuse to pierce the corporate veil. *See, e.g.*, *Clark v. Lombardi*, No. 2:10-CV-00066, 2011 WL 1533021, at *2-3 (E.D. Mo. April 21, 2011) (refusing to hold defendant liable under a piercing the veil liability theory because plaintiff provided only general allegations about defendant's control over co-defendant).

In *Clark v. Lombardi*, plaintiff alleged that defendants CMS and Valitas (the parent corporation), through their agents, engaged in illegal conduct and that Valitas operated the facilities that CMS used. *Id.* at *3. Because plaintiff did not provide any factual support for its statements that Valitas controlled CMS, the court held that plaintiff's conclusory allegations did not satisfy the pleading requirements for piercing the corporate veil and dismissed plaintiff's complaint. *Id.* at *2. *See also Arnold v. AT&T, Inc.*, 874 F. Supp. 2d 825, 833-34 (E.D. Mo. 2012) (refusing to pierce the veil because plaintiffs provided only vague assertions, not substantive support, for their claims that defendants were a single collective business operation).

Like the plaintiff in *Clark*, plaintiff here alleges only conclusory statements that Penske Truck Leasing Co., L.P., Penske Logistics LLC, Penske Logistics Europe, and Penske Logistics

3

Mexico acted as one entity. Plaintiff's allegations do not meet even the test's first factor because plaintiff makes no reference to control, nor does plaintiff explain how Penske Truck Leasing Co., L.P. controls the other three companies or how Penske Logistics LLC controls Penske Logistics Europe or Penske Logistics Mexico.[2] Thus, plaintiff's piercing the corporate veil theory fails.

Accordingly, because plaintiff has not alleged facts to allow the Court to ignore the corporate forms, it cannot rely on a piercing the corporate veil theory of liability to excuse its improper group pleading.

> B. **Plaintiff's Agency Theory Is Not Sufficiently Pled and Cannot Be Used to Hold Penske Truck Leasing Co., L.P. and Penske Logistics LLC Liable**

Plaintiff fails to sufficiently plead an agency relationship. "Three elements are required to demonstrate an agency relationship under Missouri law: (1) the agent has the power 'to alter legal relationships between the principal and a third party,' (2) the agent is 'a fiduciary of the principal,' and (3) the principal has 'the right to control the conduct of the agent with respect to matters entrusted to the agent.'" *Affordable Cmtys. of Mo. v. Fed. Nat. Mortg. Ass'n*, 714 F.3d 1069, 1074 (8th Cir. 2013) (quoting *State ex rel. McDonald's Corp. v. Midkiff,* 226 S.W.3d 119, 123 (Mo. banc 2007)). "The absence of any one of these three elements defeats a claim that agency exists." *Id.* (quoting *State ex rel. Bunting v. Koehr,* 865 S.W.2d 351, 353 (Mo. banc 1993)). The party that alleges an agency relationship bears the burden to establish its existence. *Elam v. Dawson,* 216 S.W.3d 251, 254 (Mo. Ct. App. 2007).

The Eighth Circuit has refused to hold a defendant liable under an agency theory when a plaintiff provides only legal conclusions that an agency relationship exists. *See, e.g.*, *Affordable*

---

[2] Moreover, plaintiff's argument that case law reveals that Penske Truck Leasing Co., L.P. and Penske Logistics LLC choose to lump themselves together is baseless. Penske Truck Leasing Co., L.P. and Penske Logistics LLC, like all defendants, do not choose who a plaintiff sues. The cases cited by plaintiff show nothing other than that plaintiffs typically sue the parent company along with the subsidiary and that courts sometimes combine the two companies in opinions for simplicity.

4

*Cmtys. of Mo.*, 714 F.3d at 1074-75 (affirming dismissal because plaintiff failed to establish the first element of an agency relationship and holding that plaintiff's "labels and conclusions" that EFA acted as an agent of Fannie Mae unpersuasive). As is the case with its piercing the corporate veil allegations, plaintiff only alleges conclusory statements that Penske Truck Leasing Co., L.P. and Penske Logistics LLC are agents of each other. (Compl. ¶¶ 5-8). The Complaint contains no factual allegations to support this alleged agency relationship.

Accordingly, plaintiff has not sufficiently alleged an agency relationship and cannot rely on agency liability to support its group pleadings.

### C. Plaintiff's Grouping of Penske Truck Leasing Co., L.P. and Penske Logistics LLC Violates Rule 8(a)'s Pleading Requirements

As explained above, plaintiff alleges only conclusory statements that four separate companies acted as one business entity or as agents of one another. These legal conclusions do not justify plaintiff's grouping or obviate the need for compliance with Rule 8's requirement that plaintiff provide notice to defendants of the cause of action asserted against them.

Federal district courts have held that a plaintiff cannot rationalize its grouping of defendants by merely alleging that the defendants acted as a common enterprise or as agents of each other without factual support. *See McCabe v. Caribbean Cruise Line, Inc.*, No. 13-CV-6131, 2014 WL 3014874, at *2-3 (E.D.N.Y. July 3, 2014) (dismissing complaint because plaintiff impermissibly lumps defendants and only pleads conclusory allegations that one defendant engaged in unlawful conduct "with the authorization of, and in concert with," another defendant); *U.S. Bank Nat. Ass'n v. Capparelli*, No. 13-80323-CIV, 2014 WL 2807648, at *2-3 (S.D. Fla. June 20, 2014) (dismissing complaint because third party plaintiff's allegations of agency and common enterprise were naked and baseless assertions and lumping defendants together created confusion); *Cellco P'ship v. Plaza Resorts Inc.*, No. 12-81238-CIV, 2013 WL

5

5436553, at *7 (S.D. Fla. Sept. 27, 2013) (holding that the Complaint impermissibly lumps defendants and that plaintiff's allegations that the entities were "affiliated" and "acted in concert" were too conclusory); *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080-CIV, 2011 WL 1233126, at *2 (S.D. Fla. March 30, 2011) (rejecting plaintiff's argument that grouping was appropriate because it pled that defendants acted in concert and were vicariously liable for each other).

Moreover, plaintiff's grouping does not meet Rule 8 notice requirements. *See, e.g., Bank of Am. N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013); *Bagheri v. Galligan*, 160 F. App'x 4, 5 (1st Cir. 2005); *Autuhene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). The Seventh Circuit explained why grouping is inappropriate:

> *Iqbal* and *Twombly* hold that a complaint must be dismissed unless it contains a plausible claim. A contention that "'the defendants looted the corporation'" – without any details about who did what – is inadequate. **Liability is personal**. An allegation that *someone* looted a corporation does not propound a plausible contention that *a particular person* did anything wrong. The Rules of Civil Procedure set up a system of notice pleading. **Each defendant is entitled to know what he or she did that is asserted to be wrongful.** A complaint based on a theory of collective responsibility must be dismissed.

*Knight*, 725 F.3d at 818 (emphasis added).

Furthermore, plaintiff's group pleading places inappropriate burdens on Penske Truck Leasing Co., L.P. and Penske Logistics LLC. "By comingling the factual allegations against all defendants, realleging every previous allegation by reference in each claim for relief, and presenting all counts under the doctrine of joint and several liability, [plaintiff] has effectively placed the onus on Movants to discern which, if any, of the allegations are brought against them. This is wholly improper." *Capparelli*, 2014 WL 2807648, at *3.

Finally, plaintiff's offered authority for grouping is not applicable to the facts of this case.

6

In *Toback v. GNC Holdings, Inc.*, the district court held that plaintiff's use of "GNC" to refer to the three defendants did not violate Rule 8 requirements because the plaintiff "alleged sufficient factual detail to put Defendants on notice of the nature of the claims against them." No. 13-80526-CIV, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013). Moreover, as the court explained, "Defendants have demonstrated their understanding of the Complaint's allegations against them in a brief discussion in their Reply of the interrelated corporate Defendants' roles with regard to the distribution of [the products]." *Id.* Unlike the *Toback* plaintiff, plaintiff here has not provided sufficient detail such that Penske Truck Leasing Co., L.P. or Penske Logistics LLC has notice of the nature of the claims asserted against them. Instead, as in *Capparelli*, plaintiff's grouping of Penske Truck Leasing Co., L.P. and Penske Logistics LLC just creates confusion.[3]

In sum, because plaintiff's conclusory allegations do not meet the pleading requirements for piercing the corporate veil or agency theories of liability, plaintiff cannot rely on these theories to justify its group pleading. Moreover, plaintiff's ambiguous and confusing allegations inhibit Penske Truck Leasing Co., L.P.'s and Penske Logistics LLC's ability to prepare a response that adequately addresses plaintiff's Complaint. Accordingly, plaintiff's claims should be dismissed for failing to meet Rule 8 pleading requirements, or, in the alternative, the Court

---

[3] Moreover, plaintiff's citation to *Hudak v. Berkley Group, Inc.* does not support its group pleading argument. No. 3:13-CV-0089, 2014 WL 354676 (D. Conn. Jan. 23, 2014). The *Hudak* plaintiff did not include any assertions of joint action or agency. Instead, it merely alleged all claims against defendants generally. (Case No. 3:13-CV-0089, Doc. No. 1 ¶¶ 8-13). Other courts have rejected similar allegations as failing to meet Rule 8. *See, e.g.*, *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011) (dismissing claims because defendants improperly grouped); *see also Bentley* Complaint (Case No. 10-CV-60941, Doc. No. 1 ¶¶ 14-20).

7

should require plaintiff to provide a more definite statement in full compliance with Rule 8.[4]

## II. Plaintiff's Fraud in the Inducement (Count I) and Fraud (Count VI) Claims Do Not Satisfy Rule 9(b) Pleading Requirements

Plaintiff's fraud in the inducement and fraud claims fail under Rule 9(b) because plaintiff does not allege who made the fraudulent statements, to whom these statements were made, or when and where the statements were made. Plaintiff effectively admits that its pleading does not meet the "who" requirement, claiming it provided notice only as to "date, time, and manner of the fraudulent statement." (Pl. Br. at 7). Moreover, plaintiff's brief continues to attribute all statements generally to "Penske." Furthermore, plaintiff's vague references to dates do not meet Rule 9(b) specificity requirements or provide Penske Truck Leasing Co., L.P. and Penske Logistics LLC with sufficient notice of the "where" and "when" of the fraud claims.

To satisfy Rule 9(b), "the complaint must plead the who, what, where, when, and how of the alleged fraud." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (internal quotation omitted). "[I]n cases involving multiple defendants participating in a common scheme, a plaintiff can satisfy Rule 9(b) by "inform[ing] each defendant of the nature of his alleged participation in the fraud." *Garrett v. Cassity,* No. 4:09-CV-01252, 2010 WL 5392767, at *17 (E.D. Mo. Dec. 21, 2010) (quoting *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 778 (7th Cir. 1994)).

Accordingly, attributing all fraudulent statements to defendants as a group does not meet

---

[4] Plaintiff's assertion that reading Paragraph 102.h in conjunction with 102.h.1 somehow clarifies the list of vague and overly broad billing and contract terms is misguided. Plaintiff has not explained whether it alleges that Penske Truck Leasing Co., L.P. and Penske Logistics LLC generally had no knowledge of these listed items or if it alleges a more specific claim regarding the company's knowledge of the items. As already stated, these terms are broad. While it seems unlikely that Penske Truck Leasing Co., L.P. and Penske Logistics LLC had no knowledge of things like "member profiles," "email notifications," or "payer profiles" except that gained from plaintiff, because the Complaint is so ambiguous and vague, it is unclear whether this is even plaintiff's assertion.

8

Rule 9(b) requirements. *See, e.g., Trooien v. Mansour,* 608 F.3d 1020, 1030 (8th Cir. 2010) (Under Rule 9(b), "[i]t is not sufficient to attribute alleged false statements to 'defendants' generally"); *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 550 (8th Cir.1997)(finding pleading insufficient under Rule 9(b) where defendants were "left to guess" who was "responsible for the alleged fraud"); *First Franklin Fin. Corp. v. Advantage Mortg. Consulting, Inc.*, No. 4:07-CV-1478, 2007 WL 4454292, at *4 (E.D. Mo. Dec. 14, 2007) (holding that grouping defendants deprives defendants of the opportunity to prepare an effective defense because grouping does not provide "such basic information as the identity of the [defendant] employee(s) who made the alleged representation").[5] Thus, "[t]o satisfy the heightened pleading standard, a plaintiff must attribute all misleading statements **to a particular defendant**, in order to enlighten each defendant as to its particular part in the alleged fraud." *Id.* at *4 n.5 (emphasis added).

Plaintiff fails to satisfy Rule 9(b) because it does not adequately identify who made and who heard the misrepresentations. Instead, plaintiff merely asserts that four separate companies collectively ("Penske") made the misrepresentations to another corporation ("Level One"). Such vague allegations do not meet Rule 9(b)'s "who" requirement. *See, e.g., Ariel Preferred Retail Grp., LLC v. CWCapital Asset Mgmt.*, No. 4:10-CV-623, 2011 WL 4501049, at *7 (E.D. Mo. Sept. 28, 2011).

---

[5] Other circuit courts have also held the grouping is inappropriate under Rule 9(b). *See e.g., Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012) (holding that "referring vaguely only to 'defendants;'" does not meet Rule 9(b) requirement to identify the speaker of the alleged statements); *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant… and inform each defendant separately of the allegations surrounding his alleged participation in the fraud" (internal citation and quotations omitted)); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (holding that Rule 9(b) is not satisfied when the complaint "vaguely attributes the alleged fraudulent statements to 'defendants'"); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (holding that a complaint that "lumps all the defendants together and does not specify who was involved in what [fraudulent] activity" fails to satisfy Rule 9(b)).

In *Ariel Preferred Retail Group v. CWCaptial Asset Management*, the plaintiffs alleged that defendants generally made false misrepresentations, that two named agents of defendants made representations to "a principal of Ariel," and that drafts of the agreement went back and forth between plaintiffs and defendants. *Id.* The district court held that these allegations did not satisfy Rule 9(b) because (1) plaintiffs cannot attribute false statements to defendants generally, (2) plaintiffs "never identified this 'principal of Ariel,'" and (3) "plaintiffs never identified who specifically made [the second] representation, what exactly was said, when exactly this representation was made, and to whom this representation was made." *Id.* In this case, plaintiff's allegations about who made or heard the allegations are even sparser than the *Ariel* plaintiff's allegations; thus, they fail to satisfy Rule 9(b). Moreover, because plaintiff fails to attribute any of the misleading statements to any specific defendant, its fraud claims do not satisfy Rule 9(b) requirements and should be dismissed.

Furthermore, plaintiff's fraud allegations fail because plaintiff does not allege any location for the misrepresentations and merely alleges monthly spans of time to describe when the misrepresentations occurred. Tellingly, plaintiff's brief provides more information about the timing of the misrepresentations than its Complaint. For example, plaintiff claims it alleged that false representations were made during the "summer months of 2008" and "in early 2009." (Pl. Br. 9). Plaintiff does not allege these times in its Complaint.

In any event, alleging that statements occurred sometime in a three to four month period does not provide Penske Truck Leasing Co., L.P. or Penske Logistics LLC with sufficient information to adequately respond to these severe allegations. (*See, e.g.,* Compl. ¶¶ 22-31, 44-57 (alleging misrepresentations sometime between March 2008 to May 2008 and January 2009 to March 2009). Such vague allegations of time do not satisfy Rule 9(b) pleading requirements.

*See, e.g., Stephens v. Arctic Cat Inc.*, No. 4:09-CV-02131, 2011 WL 890686, at *8 (E.D. Mo. Mar. 14, 2011) (because plaintiff used only "vague approximations of time, such as 'while Plaintiff was visiting New Mexico,' and repeated use of the word, 'thereafter' . . . the Court is unable, from Plaintiff's pleading, to determine the timing, circumstances and actors related to Plaintiff's claims").[6]

Thus, plaintiff's vague allegations of time and failure to identifying a place or specific speaker or hearer for the misrepresentations inappropriately force Penske Truck Leasing Co., L.P. and Penske Logistics LLC to guess which misrepresentation each company allegedly made and when the company made them, making it difficult (if not impossible) to adequately frame a response. Accordingly, the Court should dismiss plaintiff's fraud in the inducement and fraud claims (Counts I and VI) for failing to meet Rule 9(b) particularity requirements and not providing sufficient notice. Alternatively, if the Court does not dismiss plaintiff's fraud-based claims, Penske Truck Leasing Co., L.P. and Penske Logistics LLC respectfully request that the Court grant their motion for more definite statement regarding these claims.

### III. The Missouri Trade Secrets Act Preempts Counts I, II, IV, V, X, XI, and XII

The Missouri Trade Secret Act ("MUTSA") is plaintiff's exclusive remedy for the recovery of misappropriated trade secrets. Mo. Rev. Stat. § 417.463. The Act displaces claims that merely restate trade secrets claims. *Id*. Plaintiff argues preemption does not apply because its claims do not "reference[] or refer[] to the trade secrets" or "rely on facts unrelated to" its

---

[6] With respect to the alleged omissions, plaintiff has similarly failed to plead with the specificity required by Rule 9(b). While plaintiff claims that it is not required to provide the same level of detail for omissions as its affirmative representations, it is required to provide some detail. *In re Gen. Motors Corp. Anti-Lock Brake Products Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997) *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) ("A plaintiff bringing a claim for fraudulent omission must allege what the omissions were, **the person responsible for failing to disclose the information**, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through fraud" (emphasis added)). Plaintiff fails to identify who was responsible for failing to disclose the information.

trade secrets claim. (Pl. Br. at 13). A close examination of the facts alleged for Counts I, II, IV, V, X, XI, and XII, however, proves that the claims merely restate its trade secrets claim.

"To determine whether a claim is preempted by the MUTSA, the court must look beyond the label of the claims to the facts being asserted in support of the claims." *Secure Energy, Inc. v. Coal Synthetics, LLC*, No. 4:08-CV-1719, 2010 WL 1691454, at *1 (E.D. Mo. April 27, 2010) (internal quotation omitted). The MUTSA preempts state law claims if the claims are "based on **facts related to** the misappropriation claim." *Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg., & Counseling, LLC*, No. 4:08-CV-01683, 2009 WL 3523986, at *5 (E.D. Mo. Oct. 26, 2009) (emphasis added). Thus, to determine if a claim is preempted, courts must examine the facts underlying the trade secret and state law claims. *See Secure Energy, Inc.*, 2010 WL 1691454, at *2.

Plaintiff alleges that the "specific concepts, methods and means of implementation" which it uses in its payment management and facilitation system constitutes a protectable trade secret under the MUTSA. (Compl. ¶ 189). Plaintiff's factual allegations in support of this trade secrets claim include: "Penske" misappropriated its "Protected Knowledge and its Trade Secrets" to develop a payment and related transaction processing system [POPS] (*id.* ¶¶ 191; 193); the information was not generally known and had economic value (*id.* ¶ 190); and plaintiff protected its information with non-disclosure, confidentiality, and non-compete agreements (*id.* ¶ 192).

These factual allegations relate to the facts that form the basis of plaintiff's fraud in the inducement (Count I), negligent misrepresentation (Count II), misappropriation of the results of time, resources, and monetary investment (Count IV); head start liability (Count V), unfair competition (Count X), unjust enrichment (Count XI) and conspiracy (Count XII) claims.

In Counts I and II, plaintiff alleges that the misrepresentations in paragraphs 34 and 54

through 56 form part of the basis of its fraud in the inducement and negligent misrepresentation claims. In these paragraphs, plaintiff alleges that "Penske" promised not to use the information or solutions learned from "Level One's Protected Knowledge." (Compl. ¶¶ 34.a.-b.; 54-56). These allegations amount to claims that "Penske" misrepresented its taking and use of the trade secrets, the same facts that form the basis of plaintiff's trade secrets claim. Thus, the allegations merely restate plaintiff's trade secrets claim. *See Secure Energy, Inc.*, 2010 WL 1691454, at *3-4 (holding that the MUTSA preempts plaintiffs' fraud claims because plaintiffs' allegation that defendants falsely promised that they would not reveal the confidential information merely restated plaintiffs' trade secrets claim).

In Count IV, misappropriation of the results of time, resources, and monetary investment, plaintiff alleges, "Penske has taken the proceeds and results of Level One's investment of time, effort and money and utilized it for their own benefit… in and to develop POPS." (Compl. ¶ 110). Plaintiff alleges the "results and proceeds" from plaintiff's investment of time and effort were plaintiff's "solutions, methodologies, approaches, concepts and ideas." (*Id.*) This parallels plaintiff's trade secret definition. Thus, this factual allegation relates to plaintiff's trade secret allegation that "Penske" misappropriated the trade secret and Protected Knowledge to create POPS. The MUTSA thus preempts the claim.

In Counts V, X, XI, and XII, plaintiff's allegations similarly relate to its misappropriation of the trade secret allegations. In Count V (head start liability), Plaintiff alleges that "Penske" used the "information, knowledge, plans, schematics, methodologies and property to develop its own POPS system" and this allowed "POPS to become operational faster than it otherwise would have." (Compl. ¶¶ 114; 116). Plaintiff alleges the same facts for its trade secrets claim: "Penske… has used and is using [the trade secrets] … to gain a head start on the development of

13

a payment and related transaction processing system [POPS]." (*Id.* ¶ 193). Plaintiff's unfair competition claim (Count X) echoes these allegations: "Penske utilized Level One's Protected Knowledge" to develop POPS and gain customers. (*Id.* ¶ 200); *see Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, No. 4:00-CV-70, 2002 WL 32727076, at *5 (E.D. Mo. Feb. 25, 2002) (dismissing plaintiff's unfair competition claim because plaintiff's allegations that defendant appropriated the trade secret in order to develop a competitive product is based on facts related to the trade secrets claim). According, these claims are preempted.

Plaintiff's unjust enrichment (Count XI) and conspiracy (Count XII) claims similarly fail because they relate to the facts underlying the trade secrets claim. (*See* Compl. ¶ 205 (unjust enrichment – "As a result of the actions, inactions, violations and conduct of Penske detailed above [including the misappropriation of trade secrets], Penske has received substantial benefits); ¶ 211 (conspiracy  - "Level One's Protected Knowledge and Epay Manager were taken pursuant to agreements between and among such entities to take the indicated acts for reciprocal and joint benefit")); *see also Secure Energy, Inc.*, 2010 WL 1691454, at *5 (dismissing conspiracy claim because the allegations amounted to nothing more than "an accusation that defendants conspired to take [Plaintiff's] confidential information by improper means[.]").

Thus, the MUTSA preempts Counts I, II, IV, V, X, XI, and XII because the facts that form the basis of these claims relate to plaintiff's trade secrets claim. Accordingly, the claims should be dismissed.

## IV. Plaintiff's Head Start Claim (Count V) Is Not Viable Under Missouri Law

Plaintiff's head start liability claim should be dismissed because it is a rule of remedy, not an independent tort. Plaintiff's only support for its argument that head start liability is a viable claim, *Inauen Packaging Equipment Corp. v. Integrated Industrial Services*, 970 S.W.2d 360, 369 (Mo. Ct. App. 1998), does not support its argument. The *Inauen* plaintiff alleged a

14

combination claim of conversion and head start, making the case inapposite. *Id.* at 370.

Moreover, the Eastern District of Missouri explained, cases like *Inauen* "only considered [head start liability] as a remedy for some other tort." *Reliant Care Mgmt., Co. v. Health Sys., Inc.*, No. 4:10-CV-38, 2011 WL 4369371, at *2 (E.D. Mo. Sept. 19, 2011). The court further explained that in *Inauen*, "the Missouri Court of Appeals again explained head start in terms of compensation for misappropriation." *Id.* The court thus concluded, "The head start rule is only a rule of remedy. It limits the plaintiffs' remedy under any of the business tort theories to the time it would have taken the defendant to reproduce the process or obtain the business if it had not committed the tort." *Id.*

Accordingly, because Missouri law does not recognize head start liability as a separate tort, but as a measure of damages and injunctive relief, the Court should dismiss plaintiff's head start claim (Count V).

## V.     Conclusion

For the foregoing reasons and the reasons set forth in its opening brief, Defendants Penske Truck Leasing Co., L.P. and Penske Logistics LLC respectfully request that their Motion to Dismiss be granted and plaintiff's Complaint be dismissed with prejudice. Should the Court not dismiss the Complaint in its entirety, plaintiff should be ordered to plead with more specificity.

Respectfully submitted,

Date:   October 31, 2014            BALLARD SPAHR LLP

/s/ Douglas Y. Christian
Douglas Y. Christian, *pro hac vice*
christiand@ballardspahr.com
Brittany Wilson, *pro hac vice*
wilsonbm@ballardspahr.com
1735 Market Street, 51st Floor

15

Philadelphia, PA 19103-7599
(215) 864 – 8404
(215) 864 – 8999 (facsimile)

Jonathan R. Shulan, # 65426MO
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105
(314) 621 – 5070
(314) 621 – 5065 (facsimile)

>*Counsel for Defendants*
>*Penske Truck Leasing Co., L.P. and*
>*Penske Logistics LLC*

## CERTIFICATE OF SERVICE

       I hereby certify that on October 31, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Charles S. Kramer
Joseph D. Schneider
RIEZMAN BERGER, P.C.
7700 Bonhomme, 7th Floor
St. Louis, MO 63105

*ATTORNEYS FOR PLAINTIFF*

                                          /s/ Douglas Y. Christian
                                          Attorney for Defendants