UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LEVEL ONE TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14 CV 1305 RWS |
| | ) | |
| PENSKE TRUCK LEASING CO., L.P., et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Level One Technologies, Inc., ("Level One") has developed an electronic payment management and facilitation system for the trucking and logistics industry. The system provides trucking and logistics companies a way to communicate with and bill their customers. In 2008, Defendants Penske Truck Leasing Co., L.P., and Penske Logistics LLC ("Penske") entered into a services agreement with Level One for the use of the Level One payment management system. Level One now claims that Penske misappropriated its payment management system and related trade secrets and developed a competing system. Level One seeks relief under the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. § 417.450, *et seq.*, as well as under state tort and contract laws.

The Penske defendants have filed a motion to dismiss the complaint and for a more definite statement pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e). Level One opposes this motion and the issues are fully briefed. For the reasons set forth below, I will grant in part and deny in part Penske's motion.

**Background**

According to the complaint, on November 7, 2008, Level One and Penske entered into a five year services agreement for Penske's use of the Level One payment management system. Under the services agreement, Level One would provide Penske with access to its system and would recoup fees for each transaction that was processed using the system. Penske agreed to process approximately 913,846 transactions a year, and promised to transition its customers to the Level One system pursuant to an agreed upon timeline. Over the next four years, Level One and Penske entered into a series of other agreements related to the initial services agreement.

Level One alleges that Penske "manipulated and defrauded Level One" to obtain access to its payment management system, learn it, and then misappropriate it. Level One claims that Penske breached the terms of their services agreement by failing to transition the promised number of customers in the timeline specified, costing Penske lost revenue. Level One also alleges that, on December 10, 2012, Penske informed Level One that it no longer intended to transition to the originally promised transaction volumes and that in "late 2011" it had "begun to develop its own freight bill audit and payment solution," called POPS. Compl. ¶¶ 72-73 [Doc. #2]. Level One further alleges that Penske misappropriated Level One's proprietary and protected information and efforts in developing the POPS system, and that by doing so Penske gained a head start and was unjustly enriched.

Specifically, Level One's complaint asserts claims under Missouri law for (1) fraud in the inducement, (2) negligent misrepresentation, (3) breach of services agreement, (4) misappropriation of results of time, resources, and monetary investment, (5) head start liability, (6) fraud, (7) negligent misrepresentation, (8) breach of duty of good faith and fair dealing, (9)

misappropriation of trade secrets, (10) unfair competition, (11) unjust enrichment, and (12) civil conspiracy.

## Legal standard

In ruling on a motion to dismiss, I must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Fed. R. Civ. P. (12)(b)(6); Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Unlike state courts which often require detailed statements of fact in a petition, the federal rules require only notice pleading. Under Fed. R. Civ. P. 8(a):

> [A] complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief. Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.

Romine v. Acxiom Corp., 296 F.3d 701, 711 (8th Cir. 2002).

## Discussion

Penske moves to dismiss Level One's complaint and for a more definite statement under Fed. R. Civ. P. 12(b)(6) and 12(e). Penske asserts four arguments for dismissal: (1) The complaint should be dismissed for failure to meet pleading requirements under Rule 8(a) by improperly grouping Defendants Penske Truck Leasing Co. and L.P., Penske Logistics LLC, and non-parties Penske Logistics Europe and Penske Logistics Mexico together, (2) Count V (head

start liability) should be dismissed because it is not a viable independent claim under Missouri law; (3) Counts I, II, IV, V, X, XI, and XII should be dismissed because they are preempted by the Missouri Trade Secrets Act, and (4) Count I (fraud in the inducement) and Count VI (fraud) should be dismissed because they do not specify the time, place, or who made the alleged fraudulent statements under Rule 9(b).  In the alternative, Penske moves for a more definite statement.

  A.  <u>Grouping the Various Penske Entities</u>

Penske argues that Level One improperly groups Penske Truck Leasing Co., L.P., Penske Logistics LLC, Penske Logistics Europe, and Penske Logistics Mexico together, referring to them collectively as "Penske" in the complaint.  Penske claims that grouping these separate entities together is contrary to the requirement of Federal Rule of Civil Procedure Rule 8(a)(2) that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Although Rule 8 does not require "detailed factual allegations," it does require more than a "formulaic recitation of the elements of a cause of action."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  As stated above, the federal rules only require notice pleading.  The purpose of notice pleading is to provide a defendant with notice of the nature of the cause of action asserted against it.  <u>Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.</u>, 395 F.2d 388, 390 (8th Cir. 1968).

While there are some circumstances where grouping defendants together in a complaint would deprive the defendants of fair notice of the nature of the claims against it, such is not the case here.  <u>See</u> <u>Hudak v. Berkley Group, Inc.</u>, No. 3:13CV89 WWE, 2014 WL 354676 at *4 (D. Conn. Jan. 23, 2014) (holding that "[P]rior to discovery, plaintiff need not explain the details of

each defendant's role" in the alleged joint scheme, and noting that "nothing in Rule 8 prohibits collectively referring to multiple defendants where the Petition alerts defendants that identical claims are asserted against each defendant."). Here, Level One brings each of its claims against each of the defendants. As a result, Level One has alerted the defendants to the claims against them. Moreover, Level One provides a basis for bringing each claim against each entity. Level One alleges that each of the Penske entities acted as one unit, that Penske Logistics and Penske Truck Leasing do business as and are representatives and agents of one another, and that Penske Logistics is a wholly owned subsidiary of Penske Truck Leasing. Level One also alleges that each of the entities held themselves out as "Penske" when doing business with Level One, which would obscure Level One's ability to separate out the claims against the various entities. Applying the proper standards, I find that Level One's descriptions of the Penske defendants meet the notice pleading requirements of Rule 8(a).

    B.          Head Start Liability

Penske argues that Level One's "head start liability" claim (Count V) should be dismissed because Missouri law does not recognize the claim as an independent tort. Rather, Penske argues, it is a rule regarding damages, used either to limit the length of an injunction or the time period for which a plaintiff may recover damages in a claim for misappropriation of trade secrets.

I agree with Penske that Missouri law does not recognize "head start liability" as an independent tort. The head start rule is only a rule of remedy. It limits the plaintiffs' remedy under any of the business tort theories to the time it would have taken the defendant to reproduce the process or obtain the business if it had not committed the tort. See Reliant Care Mgmt., Co. v. Health Sys., Inc., No. 4:10CV38 CDP, 2011 WL 4369371, at *2 (E.D. Mo. Sept. 19, 2011)

5

(holding that "unfair head start" is not an independent tort); see also Superior Gearbox Co. v. Edwards, 869 S.W.2d 239 (Mo.App.1993). The Court of Appeals for the Eighth Circuit has explained that "Missouri courts employ the 'head start' rule, which provides that by misappropriating the trade secrets, a defendant is able to 'cut short' the time it would normally take to produce and market a competitive product." Synergetics, Inc. v. Hurst, 477 F.3d 949, 961 (8th Cir.2007). Thus, "[a] defendant should be enjoined only for the time it would take to produce and market the competitive product, absent the misappropriation." Id.

Level One cites to two cases to support its incorrect proposition that unfair head start is a valid tort claim. But these cases only considered it as a remedy for some other tort. In Walter E. Zemitzsch, Inc. v. Harrison, the Missouri Court of Appeals described "unfair headstart, or short cut liability," as a "measure of damages." 712 S.W.2d 418, 422 (Mo.App.1986). And in Inauen Packing Equipment Corp. v. Integrated Industrial Services, Inc., the Missouri Court of Appeals again explained head start in terms of compensation for misappropriation. 970 S.W.2d 360 (Mo.App.1998). As a result, this claim fails as a matter of law.

    C.        Preemption by the Missouri Trade Secrets Act

Next, Penske argues that Level One's claims for fraud in the inducement (Count I), negligent misrepresentation (Count II), misappropriation of results of time, resources, and monetary investment (Count IV), head start (Count V), unfair competition (Count X), unjust enrichment (Count XI), and conspiracy (Count XII) should be dismissed because they are preempted by the Missouri Trade Secrets Act ("MUTSA"). Mo. Rev. Stat. § 417.450, *et seq.* Level One agrees that MUTSA preempts conflicting tort claims for misappropriation of a trade secret. However, Level One argues that MUTSA does not preempt its tort claims because they

provide civil remedies which are not based upon misappropriation of a trade secret. Rather, Level One argues, these claims are based on a larger set of facts than just those relating to its MUTSA claim.

The MUTSA "displace[s] conflicting tort, restitutionary, and other laws . . . providing civil remedies for misappropriation of a trade secret." Mo.Rev.Stat. § 417.463.1. Federal courts in Missouri have interpreted this provision to preempt "civil claim[s] that are derivative of a claim of misappropriation of trade secrets." Bancorp Servs., L.L.C. v. Hartford Life Ins. Co., No. 4:00CV70 CEJ, 2002 WL 32727076, at *4 (E.D.Mo. Feb.25, 2002). Common-law claims are preempted as derivative "if they are based on facts related to the misappropriation of trade secrets claim." Reliant Care Mgmt., Co. v. Health Sys., 2011 WL 4369371 at *3–4 (internal citations omitted); see also Bancorp Servs., L.L.C., 2002 WL 32727076, at *4; and Hallmark Cards v. Monitor Clipper Partners, 757 F.Supp.2d 904, 917 (W.D.Mo.2010)). "The crucial question is whether 'the claims are no more than a restatement of the same operative facts' that formed the basis of the plaintiff's statutory claim for trade secret appropriation." Secure Energy, Inc. v. Coal Synthetics, LLC, No. 4:08CV1719 JCH, 2010 WL 1691454, at *2 (E.D. Mo. Apr. 27, 2010) (internal citations omitted). In determining whether to find a claim preempted under MUTSA, courts must "look beyond the label of the claims to the facts being asserted in support of the claims." Id. at *1 (internal quotations omitted). However, "[f]or preemption to be triggered, the property that has been stolen/misappropriated must be a trade secret: otherwise, the Trade Secret Act has no application." Hallmark Cards, 757 F.Supp.2d at 917. Put another way, MUTSA will not preempt a claim if the information at issue does not rise to the level of a statutorily-defined trade secret. Id.

In its MUTSA claim, Level One alleges that Penske was prohibited from "utilizing the information and knowledge gained from Level One" under the terms of the parties' agreement and based on promises made by Penske; that Penske has "usurped, copied, stolen, implemented and/or is attempting to implement most and possibly all of Level One's Protected Knowledge and its Trade Secrets, solutions, and/or methods of implementing those resolutions," and that Penske is wrongly profiting from these actions. Level One further alleges that Penske used Level One's trade secrets "to gain a head start on the development of a payment and related transaction processing system." Level One defines its trade secrets as:

> [T]he specific concepts, methods and means of implementation which it uses in its system to resolve certain specified issues and problems in the trucking and logistics industries related to billing, invoicing, and payments, inter- and intra-company communications and the creation exchanges, acceptance, approval, and payment of electronic transactions.

Compl. ¶ 189 [Doc. #2].

Under the appropriate standards, I find that Level One's claims for fraud in the inducement (Count I), negligent misrepresentation (Count II), misappropriation of results of time, resources, and monetary investment (Count IV), unfair competition (Count X), and conspiracy (Count XII) are based on the same set of operative facts as the MUTSA claim for misappropriation of trade secrets and are therefore derivative of and preempted by MUTSA. However, because Level One's claim for unjust enrichment (Count XI) may entitle Level One to relief for harms to Level One based on its remaining contract and tort claims that are not derivative of the MUTSA claim, this claim is not preempted by MUTSA. Additionally, because I have already found that head start liability (Count V) is not an independent tort under Missouri law, I need not and therefore will not address whether it would be preempted under MUTSA.

8

1. Fraud in the Inducement (Count I) and Negligent Misrepresentation (Count II)

Under its fraud in the inducement and first negligent misrepresentation claims, Level One alleges that Penske made false representations to Level One "to induce Level One to enter into . . . various agreements with Penske and to provide Penske with initial and then continuing access to [ ] Level One's Protected Knowledge." Compl. ¶¶ 85, 93 [Doc. #2]. These allegations amount to claims that Penske misrepresented its taking and use of the trade secrets, which is a restatement of Level One's MUTSA claim. As a result, the fraud in the inducement and negligent misrepresentation claims are preempted. See Secure Energy, Inc., 2010 WL 1691454, at *3-4 (finding plaintiff's fraud and negligent misrepresentation claims to be preempted by MUTSA where they amount to claims that defendants "misrepresented, concealed, and lied about the taking and use of Plaintiff's confidential information.")

2. Misappropriation of Results, Time, Resources, Money, and Investment (Count IV)

Under its misappropriation of results claim, Level One alleges that it spent significant time and money "[i]n developing the Level One System and the Level One Protected Knowledge." Compl. ¶ 108 [Doc. #2]. Level One further alleges that Penske took the "proceeds and results of Level One's investment of time, effort, and money and utilized it for their own benefit by using the solutions, methodologies, approaches, concepts and ideas of Level One in and to develop POPS." Id. at ¶ 110 [Doc. #2]. These solutions, methodologies, approaches, concepts and ideas are what Level One claims to be its trade secrets. These allegations amount to claims that Penske misappropriated Level One's trade secrets, which is a restatement of the MUTSA claim. As a result, Level One's claim for misappropriation of results, time, resources, money, and investment is preempted.

3. Unfair Competition (Count X)

In its claim for unfair competition, Level One alleges that Penske used Level One's "Protected Knowledge" to develop Penske's POPS system, that the POPS system competes with Level One's payment management and facilitation system, and that Penske "has intentionally or negligently confused its customers into believing that Penske's POPS application is a version of . . . or otherwise affiliated with Level One's Epay Manager." Compl, ¶¶ 199-200 [Doc. #2]. These claims amount to allegations that Penske misappropriated Level One's trade secrets, which is a restatement of the MUTSA claim. As a result, Level One's unfair competition claim is preempted. See Secure Energy, Inc., 2010 WL 1691454, at *5 (finding preemption where unfair competition allegations "simply describe how Defendants used the confidential information taken from Plaintiffs."); see also Bancorp Servs., L.L.C., 2002 WL 32727076, at *5.

4. Unjust Enrichment (Count XI)

Level One's claim for unjust enrichment alleges that Penske has unjustly profited from its wrongful conduct as alleged throughout the complaint – including Level One's claims under MUTSA. Compl, ¶¶ 204-08 [Doc. #2]. However, the unjust enrichment claim also encompasses harms deriving from Level One's contract-based claims and its remaining tort claims which are not a subject of the motion to dismiss or preempted by MUTSA. As a result, to the extent it relates to the non-MUTSA claims, Level One may be entitled to relief on its unjust enrichment claim.

5. Conspiracy (Count XII)

As discussed above, Level One alleges that Penske Truck Leasing, Penske Logistics, Penske Logistics Europe B.V., a/k/a Penske Logistics B.V., and Penske Logistics Mexico act together as one entity and reciprocal agents for each other. However, in the event that they are

deemed to be separate entities, Level One alleges that they conspired to take the actions pleaded in the complaint "relating to Level One [and] the Level One's Protected Knowledge and Epay Manager." Compl. ¶ 211 [Doc. #2]. Thus, misappropriation of Level One's trade secrets is the basis of the conspiracy claim and the conspiracy claim merely restates the allegations in the MUTSA claim. As a result, Level One's conspiracy claim is also preempted. See Secure Energy, Inc., 2010 WL 1691454, at *5 (holding that MUTSA preempts a conspiracy claim where the allegations "state nothing more than an accusation that defendants conspired to take [Plaintiff's] confidential information by improper means") (internal citations omitted).

        D.        <u>Heightened Pleading Requirements of Rule 9(b)</u>

Finally, Penske argues that Level One's fraud in the inducement (Count I) and fraud (Count VI) claims fail to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b) because Level One does not allege who made the fraudulent statements, to whom these statements were made, or when or where the statements were made.

Allegations of fraud are subject to a heightened pleading requirement under Rule 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet Rule 9(b) requirements, a pleading must include "such matters as the time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby." <u>Abels v. Farmers Commodities Corp.</u>, 259 F.3d 910, 920 (8th Cir. 2001). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." <u>Id.</u> The Court of Appeals for the Eighth Circuit has stated that this rule is to be interpreted "in harmony with the principles of notice pleading, and to satisfy it, the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the

11

representation and what was obtained or given up thereby." Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir.2009). "In other words, the complaint must plead the who, what, where, when, and how of the alleged fraud." Id.

That said, "[t]he special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir.2001). Furthermore, the overarching principles of notice pleading dictate that a plaintiff does not need to plead fraud "with complete insight before discovery is complete." Gunderson v. ADM Investor Servs., Inc., 230 F.3d 1363, at *3 (8th Cir.2000). As a result, Rule 9(b) does not require a plaintiff to set out specific facts concerning matters that are likely solely known by the defendant. See, e.g., Abels, 259 F.3d at 921. Likewise, the Eighth Circuit has recognized that in cases alleging a systematic scheme to defraud, the plaintiff can satisfy Rule 9(b) by providing "some representative examples of [the defendants'] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors," United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 557 (8th Cir.2006), and in cases involving multiple defendants participating in such a scheme, by "inform[ing] each defendant of the nature of his alleged participation in the fraud." Garrett v. Cassity, No. 4:09CV01252 ERW, 2010 WL 5392767, at *17 (E.D. Mo. Dec. 21, 2010) (citing Vicom, Inc. v. Harbridge Merch. Servs., 20 F.3d 771, 778 (7th Cir.1994)).

After reviewing the complaint under the appropriate standards, I find that Level One has not stated its claims for fraud and fraud in the inducement[1] with sufficient particularity to satisfy

---

[1] While I have already found that Level One's claim for fraud in the inducement (Count I) is preempted by MUTSA, I include it in this discussion as further justification for dismissing it from the complaint.

the heightened pleading requirements of Rule 9(b). With one exception,[2] Level One never attributes the alleged fraudulent representations to an individual. Instead, Level One merely alleges that "Penske" misrepresented its intentions. Moreover, Level One never names to whom within Level One these representations were made. While it is somewhat understandable that Level One would not have the names of all of the Penske employees engaged in the alleged fraudulent conduct, there is no reason why Level One should not be able to name at least some of the Level One employees to whom the representations were made, or at least identify the status or capacity in which the representations were made. Likewise, Level One never states where the alleged fraudulent representations were made.

Additionally, Level One does not state with the requisite particularity when the alleged fraudulent representations were made. Throughout the complaint, Level One alleges that a series of fraudulent misrepresentations were made between 2008 and 2012. In a limited number of instances, Level One does specify certain dates, months, or ranges of months in which alleged fraudulent representations were made. See Compl. ¶¶ 22, 42, 58-59, 61, and 71 [Doc. #2]. However, as Level One notes, "[t]he sufficiency of a pleading under Rule 9(b) depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." McDonnell Douglas Corp. v. SCI Technology, Inc., 933 F.Supp. 822, 825 (E.D. Mo. 1996) (internal citations omitted). Taken together, Level One's allegations about where, when, and by or to whom the alleged fraudulent representations were made do not give the Penske defendants sufficient notice to enable them to prepare a responsive pleading. As a result of Plaintiff's failure to comply with the

---

[2] Level One identifies Janet Chaldni as the Penske employee who initially approached Level One about entering into a business relationship in March 2008. Compl. ¶ 22 [Doc. #2].

heightened pleading requirements of Rule 9(b), I will also dismiss Level One's claim for fraud (Count VI).

## Conclusion

For the reasons stated above, I will dismiss Level One's claims for fraud in the inducement (Count I), negligent misrepresentation (Count II), misappropriation of results of time, resources, and monetary investment (Count IV), head start liability (Count V), fraud (Count VI), unfair competition (Count X), and conspiracy (Count XII). However, pursuant to Fed. R. Civ. P. 15(a)(2), I will dismiss the claim for fraud (Count VI) <u>without</u> prejudice. Plaintiff Level One shall have leave to amend its complaint within twenty (20) days of this Order to bring the fraud claim into conformity with the heightened pleading requirements of Rule 9(b) and to remove the dismissed claims from the complaint.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants' Motion to Dismiss Case and for a More Definite Statement #[11] is **GRANTED** in part and **DENIED** in part. Counts I, II, IV, V, X, and XII are dismissed <u>with</u> prejudice. Count VI is dismissed <u>without</u> prejudice.

**IT IS FURTHER ORDERED that** Plaintiff shall file an amended complaint in accordance with the terms of this Order no later than **April 10, 2015**.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 20th day of March, 2015.