# EXHIBIT B

## SOFTWARE, SOURCE CODE AND DATA ESCROW AGREEMENT

THIS SOFTWARE, SOURCE CODE AND DATA ESCROW AGREEMENT (hereinafter "Agreement") entered into this 26th day of January, 2009, by and between Level One Technologies, Inc., a corporation existing under the laws of the State of Missouri (hereinafter "Level One") and Penske Truck Leasing Co., L.P., a limited partnership existing under the laws of the State of Delaware (hereinafter "Penske").

WHEREAS, Level One and Penske entered into a Services Agreement whereby Level One shall provide Penske access to certain data and information ("Services Agreement") to be found on the web site located at the URL http://www.epaymanager.com ("Web Site"); and

WHEREAS, Penske seeks to secure rights, upon certain occurrences as addressed below, in the source code and data related to the Web Site and any software created by Level One needed to utilize and run the Web Site; and

WHEREAS, Penske also seeks to protect the confidential nature of any data submitted by Penske onto the Web Site; and

WHEREAS, Server Host and Escrow Agent is to be selected, contracted by and paid for by Level One and all fees will be reimbursed by Penske; and

WHEREAS, Level One and Penske desire to address the terms of their agreement as set forth below.

NOW, THEREFORE, in consideration of the mutual covenants herein contained and for other valuable consideration, the adequacy and receipt of which are hereby acknowledged, the parties hereby agree as follows:

1. Definitions.

    (a) The term "Web Site" shall mean Level One's web site found at the URL http://www.epaymanager.com, updates, improvements, and enhancements thereof and from time to time developed by Level One and all documentation therefore developed by Level One.

    (b) The term "Source Code" shall mean the source code listings and any other related developer/programmer-level documentation for the Web Site and any related software required to utilize and run the Web Site.

    (c) The term "Data" shall mean any information or data submitted on the Web Site by Penske and Penske's payees and carriers.

    (d) The term "Client Server" shall mean the server that is hosted with Level One's disaster recovery environment and that contains only Penske's data. Access to the Client Server will be used for disaster and testing purposes and will contain the latest versions of the Web Site software, data and source code.

    (e) The term "Level One Server" shall mean the server owned and operated by Level One which permits Penske to access and use the Web Site.

2. Duties of Penske.

    (a) In the event that the Web Site should cease to operate, for any reason whatsoever, except forced bankruptcy or insolvency or hostile takeover, Level One shall provide Penske with thirty (30) days notice prior to an expected shutdown. Penske must notify Level One of its desire to take ownership of the Client Server, in accordance with the requirements of Paragraph 2(b), within ten (10) days after Level One's notification to Penske of Level One's expected shutdown.

    (b) Penske agrees to reimburse Level One for the cost to host the Client Server, including, but not limited to, any software licenses required to run the Client Server. Level One will notify Penske in

writing within thirty (30) days of installing new software that requires the purchase of an license. In the event that Penske fails to reimburse Level One for the cost to host the Client Server, Level One can remove the Client Server with thirty (30) days written notice provided to Penske.

(e) In the event Level One undergoes a forced bankruptcy, insolvency, or hostile takeover in which Level One loses control of or access to the Web Site, Penske may have sole ownership of the Client Server, its software, source code and data. The legal transfer of ownership must be requested in writing and will be controlled by an Escrow Agent. Any and all costs associated with retrieving Client Server, its software, source code and data from the Escrow Agent will be borne by Penske, and Level One shall be under no obligation to provide programmer(s), pay for, or arrange such a transfer of the Client Server, its software, source code, data or other information. Penske shall have no rights to sell, distribute, or use the Web Site, software, source code or data for any purpose other than Penske's own use as described in the Services Agreement.

3. <u>Duties of Level One</u>.

(a) In the event that the Web Site should cease to operate for any reason whatsoever, except forced bankruptcy or insolvency or hostile takeover, Level One shall provide Penske with thirty (30) days notice prior to an expected shutdown.

(b) Level One will build, host, and maintain a Client Server for Penske as part of Level One's overall disaster recovery environment with a third party hosting service provider. The Client Server is specifically implemented for Penske and will require Penske's data and data entered by Penske's payees and carriers to be copied nightly. Level One will keep the Client Server current with the most recent versions of the Epay Manager Software and source code. The Client Server will not contain the installation of Level One's fax and imaging software unless Penske elects to purchase an additional usage license. The Client Server environment will be in place within ninety (90) days of the execution of this Agreement.

(c) Level One will provide to Escrow Agent any and all software, source code and data that would be required for Penske to continue its use of the software and/or Web Site as described in the Services Agreement in the event of any shutdown or cessation. The Escrow Agent will be in place and shall receive all required information and documentation within ninety (90) days of the execution of this Agreement.

(d) In the event Level One undergoes a forced bankruptcy, insolvency, or hostile takeover in which Level One loses control of or access to the Web Site, Level One hereby agrees that Escrow Agent shall transfer the ownership of the Client Server, its software, source code data and other programs and documentation necessary to run and maintain the Client Server to Penske. Any and all costs associated with retrieving Client Server, its software, source code and data from the Escrow Agent will be borne by Penske, and Level One shall be under no obligation to provide programmer(s), pay for, or arrange such a transfer of the Client Server, its software, source code, data or other information. Penske shall have no rights to sell, distribute, or use the Web Site, software, source code or data for any purpose other than Penske's own use as described in the Services Agreement.

(e) The Client Server, its software, source code and data will be available for release to Penske, so long as Penske remains a member in good standing of Epay Manager and is entitled to receive support. Release of the hosted Client Server, its software, source code and data is dependent upon (i) written authorization of such release by both by Level One and Penske or (ii) the receipt by Escrow Agent of a valid court order or arbitration order or (iii) Penske providing notice to the Escrow Agent that a default has occurred under this Agreement and that such default has not been cured by Level One per the terms of the Agreement.

(f) In the event Escrow Agent ceases to operate or terminates its relationship with Level One, Level One will make all commercially reasonable efforts to promptly enter into an agreement with an alternative Escrow Agent of similar nature. Level One shall provide Penske with immediate

written notice of such recurrence, and Level One agrees that the contract between Level One and the Escrow Agent shall require that Escrow Agent also provide prior written notice to Penske with not less than thirty (30) days prior notice if Escrow Agent terminates its relationship with Level One.

4. <u>Duties of Escrow Agent</u>

   (a) The Escrow Agent shall issue to Level One and to Penske a receipt for any and all materials upon delivery of each item. Any and all materials held by the Escrow Agent shall remain the exclusive property of Level One, and the Escrow Agent shall not use the materials or disclose the same to any third party except as specifically provided for herein. The Escrow Agent shall hold the materials in safekeeping at its offices herein indicated unless and until the Escrow Agent receives notice pursuant to the terms of this Agreement that the Escrow Agent is to deliver the materials, or any part thereof, to Penske or Level One, in which case the Escrow Agent shall deliver the materials, or any part thereof, to the party identified in the notice, subject, however, to the provisions of this Agreement. The Escrow Agent shall monitor access to the server in the event that Level One ceases to operate.

5. <u>Representations of Level One to Penske</u>.

   (a) <u>Source Code</u>. Level One represents and warrants to Penske that the software and source code to be transferred to the Client Server or Escrow Agent hereunder shall include all revisions, corrections, enhancements, or other changes, and shall be in a form suitable for reproduction and use by computer equipment and in condition necessary to allow a reasonably skilled third-party programmer, analyst, or operator to maintain or enhance the system licensed without the help of any other person or reference to any other material.

   (b) <u>Data</u>. Level One makes no representations or warranties with respect to the accuracy of the Data. Such shall be the sole responsibility of Penske. Any inputs, entries, revisions, updates, or corrections shall be the sole responsibility of Penske. Level One does represent and warrant that any Data entered by Penske shall be stored and maintained for access and use by Penske for a period of at least one year after the Data is first entered onto the Web Site.

6. <u>Notice of Default; Effect of Default</u>.

   (a) Level One shall be deemed to be in default of its responsibilities to Penske if:

       (i) Level One is unable or unwilling to discharge any of its maintenance obligations with respect to the Web Site in accordance with the warranties or other standards for such maintenance set forth in the Services Agreement or in any other software agreement from time to time in effect between Level One and Penske, within ten (10) days after Penske's notification specifying in reasonable detail in what respects the Web Site is not properly being maintained; or

       (ii) Level One becomes insolvent, makes a general assignment for the benefit of creditors, files a voluntary petition of bankruptcy, suffers or permits the appointment of a receiver for its business or assets, becomes subject to any proceeding under any bankruptcy or insolvency law, whether domestic or foreign, or has dissolved, liquidated, or closed its business voluntarily or otherwise, and Penske has compelling reasons to believe that such event(s) will cause Level One to fail to meet its warranty and maintenance obligations in the foreseeable future.

   (b) Upon the occurrence of any event in Paragraph 6(a)(i) or 6(a)(ii), Penske shall give written notice (hereinafter "Notice of Default") to Escrow Agent and Level One of any default by Level One. The Notice of Default shall, at a minimum, (a) be labeled "Notice of Default," (b) identify the

        Services Agreement and this Agreement, (c) specify the nature of the default, (d) identify the Source Code, and (e) demand access to the Client Server.

- (c) If Level One desires to dispute the Notice of Default, Level One shall, within ten (10) days after the receipt of the copy of the Notice of Default, deliver to Escrow Agent a sworn statement (hereinafter "Affidavit") stating that no default has occurred, whereupon the provisions of Paragraph 8 hereof will become applicable. If Escrow Agent receives the Affidavit within said ten (10) days, Escrow Agent shall send a copy thereof to Penske by certified or registered mail, return receipt requested, and Escrow Agent shall continue to hold any materials in its possession in accordance with this Agreement. If Escrow Agent does not receive the Affidavit within said ten (10) days, Escrow Agent is authorized and directed to deliver the materials described in the Notice of Default to Penske.

- (d) If, upon receipt of the Notice of Default, Level One does not dispute the Notice of Default as described above, then Level One shall transfer sole ownership of the Client Server, its software, source code and data to Penske. Penske will be given ownership and title to the Client Server and all Data, software, and source code found on Client Server. Further, Penske shall also be transferred the right to maintain, change, and customize the Client Server as it deems necessary in its sole discretion. Data located and stored on the Level One Server shall remain the property of Level One. Penske is prohibited from selling, distributing, or using the Source Code or program for any purpose other than Penske's own use as described in the Services Agreement.

7. Notice of Termination. Upon the termination of the Services Agreement by Level One resulting from an uncured breach by Penske, Level One may demand and obtain the return of any and all Level One materials in Penske's possession by furnishing written notice of the termination, agreed to by the authorized and notarized signature of Penske's representatives. Upon the termination of the Services Agreement by Level One resulting from an uncured breach by Penske, Penske shall have no right or interest in the Level One Server or the Client Server.

8. Disputes.

- (a) In the event that Level One files the Affidavit with Escrow Agent in the manner and within the time period set forth in Paragraph 6(c) hereof, or if Penske shall fail to agree that the Services Agreement has been terminated, Escrow Agent shall not release any materials in its possession to either party except in accordance with (i) a final decision of the arbitration panel as hereinafter provided, or (ii) receipt of an agreement with authorized and notarized signatures of both Level One and Penske, authorizing the release of the materials to one of the parties hereto.

- (b) Any controversy or claim arising out of or relating to this Agreement or the breach thereof, except as stated below, shall be settled by arbitration in St. Louis, Missouri, in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The prevailing party in such arbitration shall be entitled to recover from the other party the amount of all attorneys' fees, expenses, and costs incurred by such prevailing party obtaining such judgment, or in the event the arbitrator renders a partial decision against each party, then each party shall pay their pro-rata portion of the attorneys' fees, expenses, and costs incurred by both parties. Escrow Agent shall give prompt effect to any authenticated arbitration award, notwithstanding the right of either party to seek, in any court having jurisdiction thereof, enforcement or a stay of any award rendered by the arbitrator(s).

9. Payment to Escrow Agent. Payment for escrow setup and services to the Escrow Agent shall be paid by Level One and reimbursed by Penske. Penske, at its option, may pay any fees owed to Escrow Agent upon Level One's failure to make such payments. Any payments made by Penske to Escrow Agent shall be reimbursed, in full, by Level One. All costs related to the Escrow Agent will be authorized by Level One and Penske before contracting with the Escrow Agent.

Case: 4:14-cv-01305-RWS   Doc. #: 99-2   Filed: 06/22/16   Page: 6 of 7 PageID #: 1319

JAN. 27. 2009 10:56AM    PENSKE BILLING                                          NO. 029    P. 6

10. **Payment for Client Server.** All fees related to the setup, use and maintenance of the Client Server shall be paid by Level One and reimbursed by Penske. All costs related to the Client Server will be authorized by Level One and Penske before contracting with the host of the Client Server.

11. **Termination.** This Escrow Agreement shall terminate upon the delivery of all materials to either party in accordance with the terms of this Agreement.

12. **Limitation on Escrow Agent's Responsibility and Liability.**

    (a) Escrow Agent shall not be obligated or required to examine or inspect the Source Code, the Source Code documentation, or any of the revisions thereof. Escrow Agent's obligation for safekeeping shall be limited to providing the same degree of care for the materials as it maintains for its valuable documents and those of its customers lodged in the same location with appropriate atmospheric or other safeguards. However, the parties agree and acknowledge that Escrow Agent shall not be responsible for any loss or damage to any of the Source Code due to changes in such atmospheric conditions (including, but not limited to, failure of the air-conditioning system), unless such changes are proximately caused by the gross negligence or malfeasance of Escrow Agent.

    (b) Escrow Agent shall be protected in acting upon any written notice, request, waiver, consent, receipt, or other paper or document furnished to it, not only in assuming its due execution and the validity and effectiveness of its provision, but also as to the truth and acceptability of any information therein contained, which it in good faith believes to be genuine and what it purports to be.

    (c) In no event shall Escrow Agent be liable for any act or failure to act under the provisions of this Agreement except where its acts are the result of its gross negligence or malfeasance. Escrow Agent shall have no duties except those which are expressly set forth herein, and it shall not be bound by any notice of a claim, or demand with respect thereto, or any waiver, modification, amendment, termination, or rescission of this Agreement, unless in writing received by it, and if its duties herein are affected, unless it shall have given its prior written consent thereto.

    (d) The parties to this Agreement hereby jointly and severally agree to indemnify Escrow Agent against any loss, liability, or damage (other than any caused by the gross negligence or malfeasance of Escrow Agent), including reasonable costs of litigation and counsel fees, arising from and in connection with the performance of its duties under this Agreement.

13. **Notice.** Any notice required by this Agreement shall be sufficient if it is in writing and if hand-delivered or sent by registered mail to:

    (a) If to Penske:

    Penske Truck Leasing Co., L.P.
    Route 10 Green Hills
    Reading, PA 19603
    ATTN: VP-Logistics Support Services

    (b) If to Level One:

    Level One Technologies, Inc.
    875 Fee Fee Road
    St. Louis, MO 63043
    ATTN: Thomas B. Whaley

14. **Applicable Law.** This Agreement shall be governed by the laws of the State of Missouri.

15. <u>Severability</u>. If any clause herein shall be construed to be invalid or unenforceable by any court or governmental body or agency having jurisdiction thereof, then this Agreement shall be interpreted as though that clause has been omitted, and the validity of the remaining clauses of this Agreement shall not be affected thereby.

16. <u>Waiver</u>. No waiver of any breach of this Agreement shall constitute a waiver of a subsequent breach, whether or not of the same nature.

17. <u>Assignment</u>. Neither party shall assign or subcontract all or any part of this Agreement, or any interest therein, without the prior written consent of all other parties, except that Penske may assign to any subsidiary or other corporate affiliate without the consent of Level One and/or Escrow Agent, and Level One may assign to any subsidiary or other corporate affiliate without the consent of Penske and/or Escrow Agent.

18. <u>Entire Agreement and Modification</u>. This Agreement expresses the entire Agreement between the parties with respect to subjects covered by this Agreement. This Agreement shall remain in full force and effect until its expiration or termination. No change or modification of this Agreement's terms shall be valid or binding, except as may be provided in other paragraphs, unless the change or modification shall be in writing and signed by all parties.

19. <u>Binding Agreement</u>. This Agreement shall be binding upon and inure to the benefit of each of the parties hereto and its successors and permitted assigns.

20. <u>Authorization</u>. Each party hereto expressly acknowledges that it is authorized to enter into this Agreement and to bind such party to the terms and provisions hereof.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

Level One Technologies, Inc.
By: _____
Thomas B. Whaley, President

"Level One"

Penske Truck Leasing Co., L.P.
By: Penske Truck Leasing Corporation
General Partner

By: _____
Title: Thomas M. McKenna, SVP, Engineering Technology

"Penske"