UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


LEVEL ONE TECHNOLOGIES, INC.,          )
                                       )
     Plaintiff,                        )
                                       )
     v.                                )
                                       )
                                       )  No. 4:14-CV-1305 RWS
                                       )
PENSKE TRUCK LEASING CO., L.P.,        )
PENSKE LOGISTICS LLC,                  )
                                       )
     Defendants.                       )


STATUS CONFERENCE

BEFORE THE HONORABLE RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE


MARCH 9, 2018

APPEARANCES:

For Plaintiff:        Charles S. Kramer, Esq.
                      Randall D. Grady, Esq.
                      RIEZMAN BERGER, P.C.
                      7700 Bonhomme Avenue, Seventh Floor
                      Clayton, MO  63105


For Defendant:        Douglas Y. Christian, Esq.
                      Brittany M. Wilson, Esq.
                      BALLARD SPAHR, LLP
                      1735 Market Street, 48th Floor
                      Philadelphia, PA  19103


Reported By:          SHANNON L. WHITE, RMR, CRR, CSR, CCR
                      Official Court Reporter
                      United States District Court
                      111 South Tenth Street, Third Floor
                      St. Louis, MO  63102
                      (314) 244-7966
     PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

1        **(PROCEEDINGS STARTED AT 10:37 AM.)**

2            THE COURT:  Good morning.  So we're here this morning

3   in the case styled Level One Technologies against Penske Truck

4   Leasing Company, et al., Cause No. 4:14-CV-1305.  Would

5   counsel make their appearances, please?

6            MR. KRAMER:  Charles Kramer and Randall Grady for

7   Level One, Your Honor.

8            MR. CHRISTIAN:  Morning, Your Honor.  Doug Christian

9   and Brittany Wilson for defendants.

10           THE COURT:  Very good.  I wanted to get together and

11  talk about the remaining motions, the path to trial.  There's

12  still a lot of loose ends.  What's the complaint look like?

13  Who's going to get to testify?  What's the scope of their

14  testimony?  And at the end of the day, if the judge does

15  anything, I need to manage your expectations.

16           The last thing we're going to do is do, like, the

17  week before trial a *Daubert* hearing.  I'm not going to wait

18  until then.  I want to set a path to trial.  And there's still

19  a motion for summary judgment hanging out there.

20           So I wanted to get together and kind of talk about

21  the steps.  I also need to know how long you think the trial

22  is going to take because, whatever we do -- I know we have a

23  trial date in May, but that depends on what happens today.

24  And whatever date we have, it's going to be a date certain so

25  that -- uncertainty, at the end of the day, under all this,

1  does nobody any favors.  So let's define everything that we

2  can and then bring the case to its logical conclusion.

3       I think the place to start is the defendants' motion

4  to strike the amended complaint.  I'd like to talk about that

5  today and resolve that, if you want to address that.

6       MR. CHRISTIAN:  With the Court's permission, Ms.

7  Wilson will address the issue.

8       THE COURT:  Oh, sure.  When I pointed to the table, I

9  wasn't being sexist, all right?

10       MS. WILSON:  Your Honor, just to start out, no matter

11  what decision is made regarding the third amended complaint,

12  whether the allegations are allowed in or not --

13       THE COURT:  There's only two claims that are left.

14       MS. WILSON:  Right.  The unjust enrichment claim and

15  the breach of contract claim.  This does not affect our

16  current pending summary judgment motion.  It still would get

17  rid of the entire case based on everything.

18       So first off --

19       THE COURT:  But help me out, though.  I mean, I need

20  to reach -- your summary judgment is a little bit predicated

21  upon what I do with *Daubert*; correct?

22       MS. WILSON:  Correct.

23       THE COURT:  Yeah.  I just want to make sure my

24  sequencing is still in the right path.

25       MS. WILSON:  Right.  But for the same reasons that

1  they cannot prove damages even with the new allegations, our

2  summary judgment would still stand even if you allowed in

3  their new third amended complaint and the new allegations

4  within it.

5  First off, the Court should deny Level One's motion

6  to clarify because there is absolutely no need to clarify the

7  Court's order.  The Court ordered Level One as follows:  Level

8  One shall have leave to amend its complaint in order to remove

9  the dismissed claims from the complaint.

10  It did not give Level One permission to clean up the

11  complaint.  It did not give Level One permission to conform

12  the complaint to the evidence.  It did not give Level One

13  permission to reorganize its allegations.  It did not give

14  Level One permission to add new factual allegations.  It gave

15  Level One permission to do one thing:  Remove the dismissed

16  claims from the complaint.

17  For that reason alone, there's no reason to clarify.

18  It's very clear what they were allowed to do.  They didn't do

19  that.  And because they didn't do that, these new allegations

20  should be stricken from the third amended complaint.

21  THE COURT:  You would agree, though, that to the

22  extent the remaining counts incorporated allegations from the

23  dismissed counts, that they would be allowed to put those over

24  so there's no confusion about what the factual allegations

25  were; right?  I mean, some of the counts that we incorporate

by reference, these paragraphs, since those paragraphs were
going to disappear, they at least get to bring those in;
right?

      MS. WILSON:  Right.  With the exception of when it
changes their claim.  So what we found out most recently in
their opposition memorandum is that they were incorporating
what they said was 103 through 108 into their unjust
enrichment claim in paragraph 82-A and -B.  No.  Sorry.  82-B.

      THE COURT:  Right.

      MS. WILSON:  What happened, though, is that if you
look at 106 through 108, they're incorporating their fraud
claim in paragraphs -- all the paragraphs that they listed for
their fraud claim.

      However, if you look at their original complaint, the
unjust enrichment claim is very vague.  And so you have to go
to the interrogatory answer.  In their interrogatory answer
they make none of the allegations that they claim are their
false promises.

      So it's difficult for us to be able to say, yes, we
got our discovery on that, because while we did get discovery
on these fraud claims, we didn't get them in the unjust
enrichment count.  So they did bring new allegations, and
bringing that forth is prejudicial to Penske.

      There are four reasons that Penske's motion to strike
should be granted, the first of which is, of course, they've

1    exceeded the Court's -- the scope of the Court's order.  And

2    they did not actually request permission to make this

3    amendment.  Second, it's unnecessary due to notice pleading

4    and requires the Court to make an improper determination at

5    this stage.  Third, the amendment would be futile, as I

6    discussed previously, because of our summary judgment motion.

7    And, finally, the amendment prejudices Penske.

8            Before I dive into each of these reasons, I see a

9    potential solution to this.  Instead of using the third

10   amended complaint, we go back to the second amended complaint

11   and use that as our operative complaint in this case.

12           Both parties know the second amended complaint, have

13   conducted extensive discovery on the second amended complaint.

14   The parties know what claims have been dismissed from the

15   second amended complaint.  And if any issue arises of whether

16   a claim or any facts were not disclosed during discovery and

17   this comes up during trial or before trial, we can raise it

18   with a proper motion in limine or at trial, and the Court can

19   make that determination based on the full evidence.

20           Would you like me to go into more detail on the four

21   reasons?  No?  Okay.

22           THE COURT:  Not unless you -- if you want to, I'm not

23   going to -- okay?

24           MS. WILSON:  Well, I mean, I'm willing to, obviously.

25           THE COURT:  Right.

1    MS. WILSON:  But if you would like to hear from the

2  other side first, I can get back --

3    THE COURT:  Let's see what they have to say.  Your

4  proposed solution has some facial attractiveness to it.

5    MR. KRAMER:  Morning, Your Honor.  I don't know if

6  you've had a chance to review it, but yesterday we did file

7  our opposition motion, which includes a chart which literally

8  goes through all the allegations they challenge and shows

9  where they were in the second amended complaint.

10    THE COURT:  I can't say I've had a chance to study

11  it.

12    MR. KRAMER:  Right.  And I understand that.  I

13  really -- I mean, first of all, there's no dispute that we

14  were not given leave to, and did not intend to, add any new

15  claims or expand the dollar amounts that we're seeking for

16  relief or that all we were trying to do was to reformulate the

17  complaint to remove the dismissed counts.  That's what I

18  believe we've done.  And as I believe the chart shows, that

19  that is what we've done.

20    If the Court wants to go back to the second amended

21  complaint, it would just need to be clear that the provisions

22  that are incorporated by reference into the existing counts

23  are still alive.

24    And the breach of contract counts -- and while the

25  allegations were alleged in a way that covered both the

1 aspects that have been dismissed and the ones that remain

2 would have to be somehow ruled on to make it clear they still

3 exist to the extent they pertain to the remaining aspect of

4 the breach of contract count, that's what we thought we were

5 doing.  We believed the reason the Court ordered us or granted

6 us leave to file this amended complaint was to do that in

7 order to make it clear what was left and what was not, and we

8 believe that's what we did.  We're not --

9          THE COURT:  You're not in disagreement.  I mean, part

10 of it is, is in instructing the jury.  You know, you don't

11 want to talk about Count 4 and 7 and they want to know where

12 1, 2, and 5 went.

13          MR. KRAMER:  Right.

14          THE COURT:  You know?  But we're all in agreement

15 unjust enrichment or breach of contract are all that's left.

16          MR. KRAMER:  Correct.  Well --

17          THE COURT:  Not --

18          MR. KRAMER:  -- subject to our right to appeal, Your

19 Honor.

20          THE COURT:  You don't have to agree with my ruling, I

21 understand that, and you're not conceding that.  And if you go

22 to the Eighth Circuit at a later time, this doesn't stand as

23 some sort of admission.

24          MR. KRAMER:  Yeah.  We understand that.

25          THE COURT:  But that's what's before the Court now.

1     MR. KRAMER:  Correct.

2     MS. WILSON:  Your Honor?

3     THE COURT:  If it didn't happen at the podium, it

4 didn't happen.  That's the rule of the room; plus that way the

5 court reporter has a chance to . . . .

6     MS. WILSON:  We respectfully disagree that what

7 they've done is just added or reorganized their complaint.

8 They've added new things to their complaint, which I can go

9 into in more detail.

10     But I think that it is —— the simple solution is just

11 to go back to that second amended complaint and maybe we do

12 just reorganize it to say, okay, Count 1 is breach of

13 contract, Count 2 is unjust enrichment, and then move forward

14 from there and keep all the factual allegations in there, and

15 that way the references previously will still be in there.

16     THE COURT:  Well, that's where we end up.  I'm going

17 to strike the third amended complaint.  We'll stick with the

18 second amended complaint.  We'll have the two counts, unjust

19 enrichment and breach of contract.  And to the extent they

20 incorporated allegations or paragraphs from the other

21 dismissed counts, those allegations survive.  I think there's

22 no reason to spend more time and money redrafting it.

23     Let's talk about the *Daubert* motions.  I don't know,

24 Mr. Kramer, is that your bailiwick too?

25     MR. KRAMER:  It's half mine and half his.

1    THE COURT:  Well, you know.

2    MR. CHRISTIAN:  Your Honor, may I make a point with

3    regard to the motion to strike and the remaining allegations?

4    THE COURT:  Sure.  Might as well do it today rather

5    than write me tomorrow and then try to figure out what he did.

6    MR. CHRISTIAN:  One of the issues we have here is

7    that many of the allegations -- let me back up.  The unjust

8    enrichment count and every other count of the complaint

9    incorporated by reference everything that had come before them

10   in the complaint.

11   THE COURT:  There is mischief in that, but I took the

12   suggestion.

13   MR. CHRISTIAN:  The unjust enrichment count

14   incorporates everything that had been set forth in the

15   complaint before that last count, unjust enrichment.

16   Many, many, many of those factual allegations have

17   been ruled out of the case.  It is not -- even though we think

18   it's appropriate to go back to the second amended complaint,

19   the Court has ruled certain things out, including many of the

20   allegations.

21   THE COURT:  Right.

22   MR. KRAMER:  Now, if we have disputes, if this

23   proceeds to trial, they need to be handled on a case-by-case

24   basis, as any evidentiary issue is handled, either by way of a

25   motion in limine or by way of an appropriate objection or

1   motion, other motion at trial.

2           THE COURT:  So you're telling me that it is nothing

3   but mischief to revert back to the second amended complaint.

4           MR. CHRISTIAN:  Now, the second amended complaint can

5   continue as the operative complaint, but there is the history

6   of the case since the second amended complaint was filed that

7   will inform the ultimate decision or decisions as to which of

8   the facts alleged in the second amended complaint continue to

9   be relevant to an unjust enrichment count.

10          Now, it is not appropriate for plaintiff to be able,

11  in addition to stating breach of contract claims and other

12  claims, to also throw in an unjust enrichment count,

13  incorporate everything else, all of the facts that were

14  relevant to the fraud claim that's been dismissed, to the

15  breach of contract count that continues, incorporate all of

16  those into the unjust enrichment count and then be able to go

17  to a jury and not proceed under their contract count, which

18  clearly governs the parties here.  But I understand the Court

19  has not granted summary judgment to the defendants on unjust

20  enrichment.

21          But it's not appropriate for the plaintiff then to be

22  able to walk into court and bring everything in in an effort

23  to establish the unjust -- I'm sorry for the air quotes -- in

24  an attempt to establish the alleged unjust nature of the

25  defendants' activities.

1          The concept of letting everything come in on an

2    unjust enrichment count, including the facts that were alleged

3    in support of causes of action that have been dismissed, that

4    we do have problems with that.  So even though we have no

5    issue with the second amended complaint being the operative

6    complaint, we are not in agreement -- and I'm not sure

7    plaintiffs would even be suggesting this -- that everything

8    that's been pled in that complaint is still appropriate for

9    introduction into evidence.  Those decisions need to be made.

10          THE COURT:  Well, that was -- we're all in agreement

11    on that.

12          MR. KRAMER:  Well, Your Honor, yes to the extent --

13          THE COURT:  We're not going to try a fraud case.

14    We're not going to try a negligent misrepresentation case.

15    But that was the whole purpose of the third amended complaint,

16    was to clean up the complaint so we wouldn't be doing three

17    days of motions in limine and going through --

18          MR. KRAMER:  And also, Your Honor, just to be clear,

19    that it's our understanding, with due respect, that opposing

20    counsel has not only mischaracterized --

21          THE COURT:  You know, it's in the Geneva Convention

22    if you start a sentence "with all due respect," you can say

23    anything you want.

24          MR. KRAMER:  Your Honor, first of all, your rulings

25    dismissing certain counts were primarily based on things like

preemption or failure to -- I mean they have nothing -- no factual allegations have been ruled on.

Secondly, the factual allegations were alleged in the unjust enrichment account by incorporation, which is the same as setting them out. So for counsel to come forward and say that these have been already ruled out of the case, they have not been.

Now, I don't dispute that they still have to be relevant, and that's why in the third amended count we took out all those allegations about the numbers, the number of transactions that was part of the contract claim that you've dismissed, because obviously that part of it would not be relevant to anything.

But specifically the false promises, the misleading, the way they led our client on so they continued to have access to the system in order to use it to make their own, those clearly remain relevant. And they've not been ruled out of the case simply because you dismissed the fraud count.

MR. CHRISTIAN: May I? We have a contract or two that govern the relationship among the parties here. Those contracts determine what's recoverable, if anything, by plaintiffs for the alleged improper use of Epay Manager information to develop POPS. Now, those contracts were designed to deal with a situation like this. Gained knowledge regarding our product -- you may not use that with certain

1    exceptions.  That's what this case is about.

2         Now, they alleged everything else, everything else --

3    fraud, oral promises, oral contracts.  We've had a ruling from

4    the Court that there are only certain contracts that are at

5    issue here, and the other claims of fraud, the other claims of

6    unwritten contracts, they're out of the case.

7         Now, this unjust enrichment count is a problem, and I

8    think it's a problem for all of us, because you've got a

9    contract that governs the relationship of the parties.  But

10   there is some suggestion -- and by the way, they used their

11   third amended complaint to make it clear, or attempt to make

12   it clear, that the unjust enrichment count related to matters

13   outside the complaint, outside the contract.  So what they did

14   basically is look at the Court's summary judgment ruling and

15   use the third amended complaint to try to show why the unjust

16   enrichment claim is separate from the contract claim.  But

17   they haven't done that.  It's not separate.  It's a request

18   for alternative relief.

19        Now, I would welcome Mr. Kramer to tell us what

20   damages he thinks he's entitled to or what misconduct he's

21   alleging that he is not saying is within the ambit of the

22   contract that governs the relationship of the parties.

23        So we know the Court has disagreed with Penske's

24   position that they cannot pursue both of these claims, but

25   permitting plaintiffs to pursue the unjust enrichment count

1   and bring all of these allegations in, as Mr. Kramer just

2   said, broken promises, fraudulent statements, it defeats the

3   prior rulings of the Court.  It lets them on some nebulous

4   claim of unjust benefit to Penske -- lets them bring all of

5   this back into the case, and there is no question about it.

6   At this point, that's exactly what they intend to do.

7         MR. KRAMER:  First of all, Your Honor, he's rearguing

8   a summary judgment motion that's already been briefed, argued,

9   and ruled on.  Again, he's talking about bringing things back

10  into the complaint.  They've always been in the complaint.

11  And that is -- an unjust enrichment count is dependent on

12  whether it's unjust under all the circumstances.  And opposing

13  counsel is attempting to undermine the entire historic

14  practice and law regarding litigation in federal court and,

15  frankly, in state courts about how the same facts can support

16  different legal theories and if they're found not to support

17  one legal theory, they may still support another.

18        His attempt to sort of say that just because the

19  Court has found, I believe, always on the legal basis that the

20  facts alleged do not support, for example, the fraud count,

21  does not have any indication or relevance at all to whether or

22  not irrelevant to or support the unjust enrichment count.

23        I mean, I agree that they have to be relevant and

24  they have to be admissible, and we have no intention of taking

25  up the jury or the Court's time going on, you know, disjointed

1    journeys into untethered waters; but to say that these have

2    already been ruled out of the case is simply not true, and to

3    say that carte blanche they're not relevant is also not true.

4         MR. CHRISTIAN:  Your Honor, just very briefly.  To

5    establish the third prong of the unjust enrichment cause of

6    action, plaintiffs have to show -- and I'm paraphrasing -- a

7    benefit unjustly received.  So how does one show unjust?

8    Well, plaintiffs would suggest that one way is to show that

9    there was a breach of a contract.  Well, that's what their

10   contract claim is for.  Another way is to show, well, they

11   acted fraudulently toward us.  Well, that's what your fraud

12   claim is for.

13        They have to establish the nature of the unjustness,

14   if that's a word -- and if it's not, I apologize -- through

15   some manner other than pointing to a contract or pointing to

16   fraud.  And we've considered how to formally bring this to the

17   Court, and maybe the appropriate formal course of action is to

18   file a motion in limine, making --

19        THE COURT:  That's where I'm headed now, is I may --

20   we may be borrowing trouble trying to parse it, but we may end

21   up in a pretty significant motion in limine proceeding before

22   the trial starts.  And I hate to do that.  I would never do it

23   the day trial was starting.  It would have to be set weeks in

24   advance out of fairness to the parties and who the witnesses

25   would or wouldn't be and that sort of thing.

MR. CHRISTIAN:  Well, we would welcome the opportunity to brief and argue that sooner rather than later if, of course, the summary judgment ruling is not in our favor.

THE COURT:  Well, and I got to reach the *Daubert* issue to reach the summary judgment issue.

MR. CHRISTIAN:  Absolutely correct, yes.

THE COURT:  That's really the fundamental reason I wanted to get together today, is that I anticipated doing a *Daubert* hearing.  I don't know if you feel you need to have one.

MR. CHRISTIAN:  Actually, we feel -- and it's very difficult for me to say this because it's not my usual course of action, but we feel that this can be decided on the papers.

THE COURT:  You don't see the need for a hearing?

MR. CHRISTIAN:  I just don't --

THE COURT:  Usually with *Daubert* I like to have a hearing before I exclude a witness, you know.

MR. CHRISTIAN:  Well, it's entirely, of course, up to the Court on that point, but we do think, given the nature of the arguments we've made -- I mean, you've got the report. You've got the deposition.  I'm not sure what a hearing --

THE COURT:  Okay.

MR. CHRISTIAN:  And what I am sure, though, of is the expense of this as it continues on.

1   THE COURT:  That's why I want to stage it.  I want to

2   be proportional.  I don't want to just set it for -- you know,

3   have the May hearing and then a week out, you know, do all

4   these things.  We need to -- I need to reach the *Daubert*

5   issue, and I need to reach the summary judgment issue.

6   MR. CHRISTIAN:  Of course.  So our position, Your

7   Honor, is that we don't think a hearing or even an oral

8   argument is necessary, but, of course, whatever Your Honor

9   wishes.

10   THE COURT:  Mr. Kramer, do you disagree?

11   MR. KRAMER:  Your Honor, in part I would have to

12   confer with Mr. Grady because when it comes to the experts, I

13   was responsible for one and he was responsible for the other.

14   I'm not sure what our position would be, frankly,

15   Your Honor, as I stand here today, because, frankly, we would

16   like to also avoid undue delay and expense.

17   THE COURT:  Yeah.

18   MR. KRAMER:  On the other hand, Your Honor, if there

19   was any -- and we believe the motions are unfounded and that

20   the experts remain -- but if there was any inclination of the

21   Court to, for any reason, grant a *Daubert* motion, we would

22   probably have to -- well, without knowing what the Court was,

23   we would -- I believe this is probably an issue we would have

24   to get clearance from our client on.

25   MR. GRADY:  Your Honor, if I may, Randy Grady for the

1  plaintiff.  I think, given the allegations and the nature of

2  the motions, I think a hearing is probably the most

3  appropriate way to go.

4          THE COURT:  Well, what do you anticipate presenting

5  at the hearing?  The movant feels that it's fully briefed and

6  I should be able to reach it.  From your point of view, what

7  would the hearing -- what purpose would the hearing serve?

8          MR. GRADY:  I think the purpose of the hearing would

9  serve clarifying to the Court what the actual testimony and

10  the analysis was that was performed.  We're talking about Dr.

11  Rosenberg.

12          THE COURT:  Would you bring your experts in to

13  testify?

14          MR. GRADY:  I have to bring him, absolutely, yes.

15          MR. CHRISTIAN:  Your Honor, we have a record now.  A

16  hearing where the expert comes in and testifies in an attempt

17  to fix the problems, we think, is not appropriate.  We think

18  the issue for the Court in determining whether to have a

19  hearing is, is there something in the record that is not --

20  that does the Court feel that the record does not fully

21  present facts necessary to make the decision.

22          We have an expert report.  We have a lengthy expert

23  deposition.  It's not appropriate, in our view, for an expert

24  to come in and expound on what he said in the report or

25  expound on what he said in the deposition.  We have a complete

1  record at this point, and we have some very straightforward

2  arguments with regard to why this expert should not testify.

3      So if the Court feels an oral argument is necessary

4  because there needs to be some additional discussion of the

5  legal issues or the facts as applied to the law, then, of

6  course, that's fine.  And if the Court wishes to have a

7  hearing, that's fine.  But we don't think it's appropriate

8  under these circumstances for the witness to come in and try

9  to fix on the stand in a *Daubert* hearing the fatal problems of

10 the expert's approach to this matter.

11     THE COURT:  Here is where we end up.  I'm going to

12 take them under submission.  I am going to set a status

13 conference in this case for April 6 at 1:30, and hopefully by

14 then I will have ruled the *Daubert* motions and the motion for

15 summary judgment.  If I don't feel like I can reach it on the

16 papers, I'll let you know and we'll set a hearing.  Still

17 moving towards a trial date, but at April 6 we'll finalize

18 that and go from there.

19     Anything else we should talk about while we're

20 together?

21     MR. CHRISTIAN:  May I have a minute to confer with

22 counsel?

23     THE COURT:  Yeah.  Sure.

24                 **(CONFERRING OFF THE RECORD.)**

25     MR. GRADY:  One of the things we were talking about

1  was since you've set the status conference in May and we were

2  sort of -- you made some reference to as we go along about the

3  status of the May trial date, we're hoping to glean some of

4  your thoughts about were you thinking about moving it?  Was

5  that depending on how you ruled on the summary judgment?

6  We're just a little concerned about coming back and --

7       THE COURT:  I'm concerned that I still have a lot to

8  do to define the case.  And to manage the cost of the case,

9  you need answers to those questions.  May seems a little

10  tough, but I wasn't prepared just to pull it back completely.

11  But if you all have talked about alternative dates, I am not

12  here to totally disrupt the apple cart.  But that is a

13  possibility at the April hearing.

14       MR. CHRISTIAN:  If I may, why don't we take some

15  time.  I think there will be a proposal for a new trial date.

16       THE COURT:  Okay.  Obviously, my schedule has to play

17  in there too.

18       MR. CHRISTIAN:  No.  Of course.  But I think the

19  point, what I mentioned to these fellows, is I don't think

20  waiting until April to find out whether we're on for May is

21  going to save us much money here.

22       THE COURT:  Okay.

23       MR. CHRISTIAN:  A lot has to be done if we are going

24  to have a trial to prepare for that.

25       MR. GRADY:  And, obviously, as plaintiff, we'd like

1   to get to trial as quickly as possible, but we understand

2   what's going on.

3        THE COURT:  You're on the hit list.  I don't think I

4   have many cases older than this one.  Are you asking me to

5   vacate the May setting to discuss an alternative based upon my

6   ruling?

7        MR. GRADY:  We are not in a position to do that.

8        MR. KRAMER:  Your Honor, as Randy said, we understand

9   that there's a reasonable likelihood that it might be

10  necessary to move it, but we can't -- and we need to get this

11  to trial.  And if we vacate it without a new date and it

12  doesn't get set till later --

13       THE COURT:  We're not talking about 2019, you

14  understand.

15       MR. KRAMER:  I know that your calendar gets booked,

16  and when is the next date and --

17       THE COURT:  It's not like the old days.

18       MR. CHRISTIAN:  I anticipate there will be a joint

19  motion to vacate.  I think not everyone is in a position to

20  make that request, but I would --

21       THE COURT:  I won't borrow trouble.  I'll wait until

22  I get your motion, and we'll figure it out.

23       MR. GRADY:  Thank you, Your Honor.

24       THE COURT:  All right.  Thanks.  And if you get your

25  backs to the wall without being able to reach a decision, let

1   me know, and then we'll take it from there.

2          MR. CHRISTIAN:  Very good.  Thank you, Your Honor.

3          THE COURT:  Thank you.

4              **(PROCEEDINGS CONCLUDED AT 11:10 AM.)**

<u>CERTIFICATE</u>

I, Shannon L. White, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 24 inclusive and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated at St. Louis, Missouri, this 29th day of March, 2018.


/s/Shannon L White
_____
/s/Shannon L. White
Shannon L. White, CRR, RMR, CCR, CSR
Official Court Reporter